## Kensington National Bank *versus* Yerkes, Def't, and the Wyoming Ins. Co., Garnishee.

1. Where in the body of a policy of insurance it is stipulated that payment is to be made after notice, proof and. adjustment of the loss "in conformity to the annexed conditions," the conditions printed on the back of the policy, although unsigned, form a part of the contract of insurance.

2. Where one of these conditions provides, that "should, during the life of this policy, an encumbrance fall * * * upon the property insured, sufficient to reduce the real interest of the insured in the same to a sum equal to or below the amount insured * * * the policy shall be void," and the insured confesses a judgment for an amount in excess of the value of the property, an encumbrance *falls* within the meaning of the terms of the policy, and it is thereby avoided.

February 6th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term 1875, No. 84½.

Attachment execution sur judgment, obtained by the Kensington National Bank against Charles T. Yerkes, defendant, which attachment was served upon the Wyoming Insurance Company, garnishee.    Plea, *nulla bona.*

The insurance company had insured for Yerkes certain real estate in Philadelphia, which was subsequently destroyed by fire. The bank claimed this insurance money.    The insurance company defended on the ground that the policy was void by reason of the seventeenth condition of their policy, which was printed on the back of the policy and formed part, as they claimed, of the "conditions annexed," referred to in the body of the policy, wherein it was stipulated that the loss should be paid sixty days after notice, proof and adjustment thereof, "in conformity to the conditions annexed to this policy."

The seventeenth condition reads as follows :—

" The insurance by this policy shall cease at and from the time the property hereby insured shall be levied on, or taken into possession or custody under any proceeding in law or equity; and should there, during the life of this policy, an encumbrance fall or be executed upon the property insured, sufficient to reduce the real interest of the insured in the same to a sum only equal to or below the amount insured, and he neglect or fail to obtain the consent of the company thereto, then and in that case the policy shall be void."

The only evidence on this point was that of Yerkes, the defendant, who testified " that the insured property was burned in August 1872; there was a total loss. * * The value of the property was $60,000. * * No levy was ever made upon the property. * * I owed the debt to the plaintiff of $148,614.03, for which it held the judgment against me."

[Kensington Nat. Bank *v.* Yerkes.]

It did not appear that Yerkes ever gave notice to the company of the existence of this judgment, and no levy was ever made upon the property under it.

The insurance company offered no evidence, and the court instructed the jury " that under the seventeenth section of the conditions of said policy they must find for the garnishee."

This instruction was the error assigned by the bank, which took this writ.

*A. Sidney Biddle* and *R. C. McMurtrie*, for plaintiff in error. —The conditions printed on the back of a policy are no part of the contract of insurance ; it is not necessarily incorporated into the contract unless expressly so stipulated.   If it was a question of doubt as to what the contract between the parties was, it should have been at least left to the jury to determine whether the insured assented to the conditions, without which express assent they could form no part of the contract.   It is well settled that where a condition restricting the liability of a carrier, who is an insurer, is printed upon the back of the evidence of the contract, the ticket, or bill of lading, it can, under no circumstances, unless by the terms of the contract itself, made a part thereof, be considered more than a mere notice limiting the common-law liability ; and the defendants, upon whom the burden ·of proof is cast, must, in such cases, affirmatively show that the notice was brought to the attention of the party to be bound by it: Henderson *v.* Stevenson, House of Lords, on appeal from the Court of Sessions in Scotland, 27 L. T. R. N. S. 709; Jefferson Ins. Co. *v.* Cotheal, 7 Wend. 80 ; Kimball *v.* Railroad Co., 26 Vt. 247 ; Adams Express Co. *v.* Haynes, 42 Ill. 89; Railroad Co. *v.* Hale, 6 Mich. 243; McMillan *v.* Railroad Co., 16 Id. 79; Limburger *v.* Westcott, 49 Barb. 283 ; Moses *v.* Railroad Co., 4 Foster (N. H.) 71; Nevens *v.* Steamship Co., 4 Bosw. (N. Y.) 225 ; Perry *v.* Thompson, 98 Mass. 249 ; Bean *v.* Green, 12 Me. 422; Stevenson *v.* Express Co., 21 Wis. 405; Bank *v.* Champlain Trust Co., 23 Vt. 186; C. & A. Railroad Co. *v.* Baldauf, 4 Harris 67 ; Verner *v.* Sweitzer, 8 Casey 208 ; Beckman *v.* Shouse, 5 Rawle 188.

Even if the endorsed conditions were part of the contract of insurance, the one alleged to have been broken was nothing more than a promissory stipulation, in the nature of a representation, and the judge should have left it to the jury to decide whether the breach of this representation had increased the risk, with the instruction that, if it had not, the breach of the condition was no defence : Pawson *v.* Watson, Cowper 785 ; Alston *v.* Ins. Co., 4 Hill 329 ; Burritt *v.* Ins. Co., 5 Id. 188 ; Ins Co. *v.* Monniniger, 18 Ind. 359.

The condition relied on is a limitation of or an exception to the contract, and, therefore, to be strictly construed.   It does not avoid

the contract by the existence of an encumbrance, but by such a use of an encumbrance as reduces the real interest of the insured. The words are taken from New England policies, where they mean a ·levy or sale dividing the title. To apply them to what is a mere security for the debt of the insured, is to ignore entirely the qualification that his interest shall be reduced. His interest on property is not lessened by the fact that it is charged with his debts. To have this effect the debtor must be hopelessly insolvent.

*Samuel Dickson* and *J. C. Bullitt*, for defendant in error.— DeSilver *v.* The State Mutual Insurance Company, 2 Wright 130, ruled that "conditions annexed to a policy of insurance have the same effect as if they were incorporated in a policy." See also Fire Association *v.* Williamson, 2 Casey 196 ; Trask *v.* Insurance Co., 5 Id. 198; Inland Ins. Co. *v.* Stauffer, 9 Id. 397. A like rule exists in England and in most of the states.

The liabilities of common carriers rest upon the custom of the realm and the duties they owe the public, independently of contract stipulations; whereas, as was said by WOODWARD, J., in West Branch Ins. Co. *v.* Helfenstein, 4 Wright 289, 296, "a policy of insurance, with all its clauses, conditions and stipulations, is the law of the relation between insurers and the assured, by which their mutual rights and liabilities are to be defined and measured."

The ruling of the court below is sustained by the decision of this court, upon a condition identical with this one, in the case of Brown *v.* The Commonwealth Mutual Ins. Co., 5 Wright 189.

The judgment of the Supreme Court was entered, February 18th 1878,

PER CURIAM.—We think the conditions printed upon the policy form a part of its terms. Not only do they, in fact, appear upon the instrument itself, accepted by the assured, and presumably were noticed by him, but they are referred to in the body of the policy, which declares that payment is to be made sixty days after the notice, proof and adjustment of the loss, "in conformity to the conditions annexed to this policy." The assured was thus referred to the "annexed conditions," in order to find those affecting the payment of his loss, and necessarily must discover the others in doing so. It would be going too far to say that he did not accept his policy affected by the conditions printed upon it, and thus referred to. Under the 17th condition the policy ceases *ipso facto*, when the insured property is levied upon, or taken into possession or custody, under any proceeding in law or equity. The next clause ·is, " and should there, during the life of this policy, an encumbrance fall or be executed upon the property insured, sufficient to reduce the real interest of the insured in the same to a sum only equal to

[Kensington Nat. Bank *v.* Yerkes.]

or below the amount insured, and he neglect or fail to obtain the consent of the company thereto, then and in that case the policy shall be void." The former clause having relation to an act of law, this is intended to protect the company against the . act of the assured himself. Hence, if he suffer a judgment to be entered against him, the encumbrance *falls*, and if he executes a mortgage, it is *executed* upon the property, and he must give notice and obtain consent; or, otherwise, if the encumbrance gives another a right, and lessens his own interest in the property to a sum not exceeding the amount in the policy, he forfeits his policy.

Judgment affirmed.